[No. 38544-5-I.   Division One.   June 30, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. R.H.,
*Appellant.*

*Kelly V. Curtin, Rosemary H. Kaholokula*, and *Nielsen & Acosta*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Jennifer K. Ryan Gilman, Deputy*, for respondent.

ELLINGTON, J. — This case requires us to decide whether the State must disprove a statutorily recognized "public premises" defense to trespassing. Because this defense negates an element of the charged crime, due process requires the State to disprove the defense beyond a reasonable doubt. We reverse the disposition of guilt because the State did not meet this burden.

## Facts

R.H. was charged with trespass because he returned to a fast food restaurant after the police ordered him to leave.[1] The restaurant is owned by Rick Corbitt, who allows skateboarding as a form of transportation to and from his business. Neither recreational skateboarding nor loitering is allowed.

On July 7, 1995, Tom Herzog was managing the restaurant for Corbitt and had the authority to evict individuals. On that evening, several young people were loitering and skateboarding in the parking lot of the restaurant. Herzog twice asked them to leave, but they did not. R.H. arrived

---

[1]The findings of fact have not been challenged and therefore are verities on appeal. *See, e.g., State v. Aten*, 130 Wn.2d 640, 668, 927 P.2d 210 (1996).

later by skateboard. He planned to eat at the restaurant with a friend and waited in the parking lot for that friend.

Herzog summoned the police to disperse the youths. He asked the responding officers to evict the entire group of young people. The officer brought the group together and told them if they did not leave the premises, they would be arrested for criminal trespass. R.H. believed this order did not apply to him because he planned to patronize the restaurant. At the hearing, Herzog testified that if R.H. planned to eat at the restaurant and was waiting for a friend to accompany him, he would have had permission to remain on the property. Herzog also testified, however, that he did not communicate this to the officer:

Defense Counsel: [A]ssuming theoretically that [R.H.] was there and that he was there to be a customer and/or to meet another customer, did he have your permission?

Herzog: Yes.

Defense Counsel: Would he have had your permission to be on the premises?

Herzog: Yes, yes, yes, like they do all the time.

Defense Counsel: And you did not specifically indicate to the Officer which individuals you wanted to leave?

Herzog: No, I did not. I just — I wanted all of them.

Defense Counsel: You just wanted everybody that you —

Herzog: I wanted all the children in that area off my property and away from my business.

Defense Counsel: But not the legitimate customers?

Herzog: No.

Because Herzog told the officer to evict all the youths,

the officer informed R.H. that he had to leave despite the fact that he was waiting for a friend and intended to eat at the restaurant. The officer told R.H. to leave several times before he did.

Shortly after leaving, R.H. traveled through the parking lot on his skateboard, looking for his friend. Not seeing him, R.H. continued to an adjacent business. The police followed R.H. there and arrested him for trespass.

R.H. was charged with criminal trespass in the second degree. Because he was a juvenile, the charge was adjudicated by disposition. The presiding commissioner found that R.H. was not part of the loitering group, was at the restaurant to meet a friend so they could eat there, and after being ordered to leave, passed through the parking lot to see if his friend was waiting for him. The commissioner held that passing through the lot was unlawful because R.H. understood he had been ordered off the property and believed he was not allowed to return. R.H. challenges that conclusion.

## Discussion

■ The issue is whether the State presented sufficient evidence to support the disposition of guilt. When considering such a claim, this court views the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

The trespass charge requires the State to prove R.H. knowingly entered or remained unlawfully upon the premises of another.[2] *See* RCW 9A.52.080(1). The element at issue here is whether R.H. was unlawfully on the

---

[2]In relevant part, the trespassing statute states: "A person is guilty of criminal trespass in the second degree if [that person] knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree." RCW 9A.52.080(1).

premises, that is, "not then licensed, invited, or otherwise privileged to so enter or remain."[3] *See* RCW 9A.52.010(3).

By statute, it is a defense to criminal trespass if "[t]he premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining on the premises." RCW 9A.52-.090(2). R.H. contends the State must disprove this public premises defense beyond a reasonable doubt and did not, and that the disposition of guilt must therefore be reversed. We agree.

■ As a threshold matter, the State argues R.H. waived the defense by not raising it below. We reject that argument because, while the statute was not invoked, the defense was implicitly raised throughout the trial. For example, from the State's witnesses, defense counsel elicited testimony that the parking lot was open to the public; that customers could travel to the restaurant on skateboards; that R.H. was not specifically identified as someone Herzog wanted removed; that if R.H. was waiting for another customer, he had permission to stay on the premises; and that R.H. repeatedly informed the arresting officer he was waiting for such a customer. Defense counsel also elicited testimony relevant to the public premises defense from R.H. and his friend. The friend testified that he and R.H. planned to meet and patronize the restaurant. Indeed, the friend met R.H. immediately before the arrest. R.H. confirmed this testimony. In closing, defense counsel argued that the officer did not have authority to evict R.H. because he was complying with Herzog's rules. Thus, defense counsel did everything to assert the defense except cite the statute. Even if the defense were not raised below, we would still address it here because it essentially challenges the sufficiency of the State's evidence, an issue of constitutional magnitude, and therefore can be raised for the first time on appeal. *See, e.g., State v. Alvarez,* 128 Wn.2d 1, 9-10, 904 P.2d 754 (1995); RAP 2.5(a)(3).

---

[3]"A person 'enters or remains unlawfully' in or upon premises when [that person] is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(3).

■ The State takes the position that the public premises defense is an affirmative defense that the defendant must prove by a preponderance of the evidence. Due process requires that the State prove every element of an offense beyond a reasonable doubt; if a defense negates an element of the charged crime, the State has the constitutional burden to prove the absence of the defense beyond a reasonable doubt. *See, e.g., State v. Lively*, 130 Wn.2d 1, 10-11, 921 P.2d 1035 (1996).

■ The public premises defense applies when the defendant has "complied with all lawful conditions imposed on access[.]" RCW 9A.52.090(2). If a person so complies, that person is "privileged to . . . enter" and there is no "unlawful" entry. *See* RCW 9A.52.080(1); RCW 9A.52.010(3). The defense therefore negates an element of the crime, and cannot be deemed an affirmative defense because to do so would relieve the State of its burden of proof. *See, e.g., Lively*, 130 Wn.2d at 10-11.

The State thus had to present evidence from which a rational trier of fact could conclude beyond a reasonable doubt that R.H. did not comply with the lawful conditions of access to the premises. *See* RCW 9A.52.090(2); *Green*, 94 Wn.2d at 221. Here, there were two such conditions: no recreational skateboarding and no loitering. The unchallenged findings state that R.H. was not part of the loitering group, and there was no evidence R.H. was involved in recreational skateboarding. Herzog testified that R.H. was privileged to remain on the premises if he intended to patronize the restaurant with another who was arriving later, which the commissioner found was indeed R.H.'s intent. Under these circumstances, no reasonable trier of fact could conclude R.H. had not complied with all lawful conditions of access. *See* RCW 9A.52.090(2).

The commissioner nevertheless concluded that "[i]t was unlawful for [R.H.] to return to the property" because he "understood that he had been ordered off the property" and "believed that he was not allowed to return to that property that night." But what R.H. "understood" or

"believed" is not relevant to whether his presence was unlawful. Under this analysis, one would be guilty of trespass by returning to property after being unjustly ordered to vacate it. That, the law does not condone. *See, e.g., Cox v. Louisiana*, 379 U.S. 536, 85 S. Ct. 453, 13 L. Ed. 2d 471 (1965).

Reversed.

BECKER and COX, JJ., concur.