[No. 17668-1-III.   Division Three.   August 24, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID ARNOLD FINLEY, *Appellant*.

130

*Hugh M. Spall, Jr.*, for appellant.

*Gregory L. Zempel, Prosecuting Attorney*, and *Laura Candace Hooper, Deputy*, for respondent.

SWEENEY, J. — This is a trespass and assault case. A bartender kicked David Finley out of a bar following two angry,

belligerent confrontations with his girl friend, other bar patrons, and police. His appeal presents two substantive questions. The first is whether the facts required the court to instruct the jury on voluntary intoxication. We conclude that the trial court correctly refused to instruct on voluntary intoxication. Mr. Finley failed to show impairment of his mental acuity sufficient to prevent him from forming the necessary mens rea to commit second degree assault and criminal trespass. *State v. Gabryschak*, 83 Wn. App. 249, 252-53, 921 P.2d 549 (1996). The second question is whether the State or Mr. Finley had the burden of proving that his permission to enter or remain at the bar—a public place—had been revoked. The State had the burden to prove his permission to enter or remain had been properly revoked. *State v. R.H.*, 86 Wn. App. 807, 810-12, 939 P.2d 217 (1997). And it did so. We therefore affirm the convictions.

## FACTS

David Finley walked into the Thunderbird Restaurant and Bar on April 19, 1998. He confronted his girl friend and accused her of cheating on him. The bartender, Clara Barrett, knew Mr. Finley. She told him to leave. She did not believe he was intoxicated.

Mr. Finley left, but returned five minutes later. Ms. Barrett again told him to leave. He refused. Mr. Finley's friend, Joe, and another bar patron, Lisa, escorted Mr. Finley to the door. Mr. Finley stopped and pushed Lisa. Joe then pushed Mr. Finley to the floor.

Ms. Barrett summoned the police. They responded. She told them that she had "eighty-sixed"[1] Mr. Finley from the Thunderbird. The officers told her she must do it in their presence. She then "eighty-sixed" Mr. Finley in the officers' presence. She told him never to come back to the Thunderbird. She also explained her authority to do so:

---

[1] "[T]o refuse to serve (an undesirable or unwelcome customer) at a bar or restaurant . . . to reject; discard." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 625 (2d ed. 1987).

Q. [By the State] All right. Now, I guess the question is what your authority was at the bar to be able to eighty-six people?

A. It's my job as bartender serving drinks to make sure everybody has a good time and make sure everybody stays in control. And when I am a bartender I have older—the Thunderbird has a reputation of older couples coming in their sixties dancing.

[Counsel for Mr. Finley]: Your Honor, this is nonresponsive.

THE COURT: Sustained. Wait for the next question.

Q. [By the State] Get to the authority part.

A. My authority is that if anybody who is in there and I don't want them in there they have to leave, you know.

Report of Proceedings at 13-14.

Her testimony is unrefuted.

Officer Scott Willis told Mr. Finley he could not go back into the Thunderbird. In his report, he wrote the "Thunderbird lounge." Police told Mr. Finley that he would be cited for criminal trespass if he went into the Thunderbird building.

Officer Nelson Ng offered Mr. Finley a ride home. Mr. Finley declined and told the officer that he would wait across the street for his girl friend. He said that he understood he could not reenter the Thunderbird.

Officer Willis believed Mr. Finley would disobey his orders. He parked his patrol car across the street and watched Mr. Finley. About 15 minutes later, Ms. Barrett called and reported that Mr. Finley had returned and was standing in the doorway to the bar. Dispatch notified Officer Willis. Officer Willis returned and saw Mr. Finley standing in the bar doorway between the bar, restaurant, and restrooms. He escorted Mr. Finley out.

Mr. Finley became belligerent and uncooperative. Officer Willis handcuffed him. He ordered Mr. Finley to spread his legs for a pat down. Mr. Finley refused. The officer spread

Mr. Finley's legs. Mr. Finley lost his balance and fell onto the front of the officer's car. Mr. Finley angrily asked why he was being arrested.

Officer Ng returned to assist. He began to place Mr. Finley in the patrol car. Mr. Finley walked backwards without a problem. The officer told Mr. Finley to step back. Mr. Finley stepped back, looked at Officer Ng's foot, and then stomped on it. The officer was wearing his uniform, badge, and had identified himself as an officer.

Officers Willis and Ng thought Mr. Finley was intoxicated because he smelled of alcohol, his eyes were bloodshot and watery, and his speech was extremely slurred. Officers Willis and Ng did not note these observations in their police reports.

The State charged Mr. Finley with assault in the third degree, RCW 9A.36.031(1)(g) (assault of a law enforcement officer), and criminal trespass in the second degree, RCW 9A.52.080(1).

At trial Mr. Finley reserved opening statement and presented no witnesses.

The court assembled the instructions it intended to give. The packet included an instruction on the legal effect of voluntary intoxication since, according to the judge, "there was some evidence of intoxication." Mr. Finley's attorney had not requested the instruction but thanked the court. The prosecutor objected to the instruction because of insufficient evidence to support it. She noted that Mr. Finley understood police instructions.

The court noted the absence of evidence that Mr. Finley did not know what was going on and pulled the voluntary intoxication instruction. The proposed instruction is not part of the record and is apparently unavailable.[2] Mr. Finley was convicted on both charges.

---

[2]Mr. Finley's attorney requested the Kittitas County Superior Court to transmit to this court the proposed voluntary intoxication instruction as Supplemental Clerk's Papers. By way of a letter dated December 11, 1998, the superior court clerk informed this court that the proposed voluntary intoxication instruction was not on file with the superior court.

## DISCUSSION

### 1. Intoxication Instructions

The first question here is whether Mr. Finley properly preserved this assignment of error. He did not request the instruction or include it in the Clerk's Papers. *State v. Potter*, 68 Wn. App. 134, 144 n.3, 842 P.2d 481 (1992).

There was no reason for Mr. Finley's attorney to formally request a voluntary intoxication instruction because the court proposed the instruction sua sponte. Unfortunately, the instruction is not part of the record.

We may nonetheless address the issue if there is sufficient evidence in the record. *Id.* Here, the court originally included a voluntary intoxication instruction. The State objected and defense counsel acknowledged the absence of evidence. The court did not instruct the jury on intoxication because of insufficient evidence to tie Mr. Finley's intoxication to his inability to form the requisite mental state to commit the charged crimes. The State concedes on appeal that the court likely proposed the standard instruction on involuntary intoxication, 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.10, at 220 (2d ed. 1994) (WPIC). The record is therefore sufficient to review the issue.

■■ A defendant is entitled to have his or her theory of the case submitted to the jury under appropriate instructions when the theory is supported by substantial evidence. *State v. Washington*, 36 Wn. App. 792, 793, 677 P.2d 786, *review denied*, 101 Wn.2d 1015 (1984). To support a voluntary intoxication instruction, Mr. Finley must show "(1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) evidence that the drinking affected the defendant's ability to acquire the required mental state." *State v. Gabryschak*, 83 Wn. App. 249, 252, 921 P.2d 549 (1996) (citing *State v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37, *review denied*, 119 Wn.2d 1024 (1992)); *Washington*, 36 Wn. App. at 793.

■ Affirmative evidence of the defendant's impairment

certainly is the most effective. But the defendant may exercise his right to remain silent, and rely instead on the State's evidence and cross-examination of the State's witnesses to support a voluntary intoxication instruction. *Gabryschak*, 83 Wn. App. at 253.

Both crimes here require a specific mens rea. Second degree criminal trespass required the State to prove, among other elements, that Mr. Finley knowingly entered onto or remained at the Thunderbird bar. RCW 9A.52.080(1). Third degree assault required the State to prove assault of a law enforcement officer. RCW 9A.36.031(1)(g). Intent is a nonstatutory element of assault. *See State v. Brown*, 94 Wn. App. 327, 972 P.2d 112 (1999); *State v. Allen*, 67 Wn. App. 824, 826, 840 P.2d 905 (1992); WPIC 35.50.

Evidence of drinking alone is not enough to warrant an intoxication instruction. *Gabryschak*, 83 Wn. App. at 253. The evidence must reasonably and logically connect Mr. Finley's intoxication with his inability to form the requisite mental state. *Id.* at 252-53. *Gabryschak* requires " 'substantial evidence of the effects of the alcohol on the defendant's mind or body.' " *Id.* at 253 (quoting *Safeco Ins. Co. v. McGrath*, 63 Wn. App. 170, 179, 817 P.2d 861 (1991), *review denied*, 118 Wn.2d 1010 (1992)). We agree with that holding.

Many criminal acts follow the use of alcohol or drugs. *See Montana v. Egelhoff*, 518 U.S. 37, 49, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996) ("A large number of crimes, especially violent crimes, are committed by intoxicated offenders; modern studies put the numbers as high as half of all homicides, for example."). However, the court is required to give a voluntary intoxication instruction only in those cases in which the level of mental impairment caused by alcohol or drugs clearly affected the defendant's criminal responsibility by eliminating the necessary mens rea.

There is ample evidence that Mr. Finley had been drinking.

But nothing here reasonably and logically connects Mr. Finley's intoxication with an inability to form the neces-

sary mental states for these crimes. *See Gabryschak*, 83 Wn. App. at 252-53. The bartender did not believe Mr. Finley was intoxicated. Report of Proceedings at 8, 16-17, 20-21. He complied with all of the officers' requests, except their order that he not reenter the Thunderbird building. At one point he walked backwards while being escorted to the patrol car. Report of Proceedings at 50-52. Mr. Finley told the officer that he understood he could not reenter the Thunderbird. He said he would wait across the street for his girl friend. Report of Proceedings at 49. After Officer Willis returned to the bar, Mr. Finley told him "he wasn't in here"—Mr. Finley knew he was not supposed to be in the Thunderbird. Report of Proceedings at 26-27. Mr. Finley knew he was under arrest. He asked why. Report of Proceedings at 28, 50. Mr. Finley was neither confused nor disoriented.

The trial court properly refused to instruct the jury on voluntary intoxication. *Gabryschak*, 83 Wn. App. at 252-53.

## 2. Criminal Trespass

To convict Mr. Finley of second degree criminal trespass, the State had to prove that "he knowingly enter[ed] or remain[ed] unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree." RCW 9A.52.080(1); *State v. R.H.*, 86 Wn. App. 807, 810, 939 P.2d 217 (1997). A person "enters or remains unlawfully" in or upon premises when he or she is not then licensed, invited, or privileged to so enter or remain. RCW 9A.52.010(3); *State v. Kutch*, 90 Wn. App. 244, 246-47, 951 P.2d 1139 (1998).

■ "Due process requires that the State prove every element of an offense beyond a reasonable doubt; if a defense negates an element of the charged crime, the State has the constitutional burden to prove the absence of the defense beyond a reasonable doubt." *R.H.*, 86 Wn. App. at 812 (citing *State v. Lively*, 130 Wn.2d 1, 10-11, 921 P.2d 1035 (1996)).

Mr. Finley cites two provisions of RCW 9A.52.090 in his defense:

(2) The premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; or

(3) The actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain[.]

However, he argues only subsection (2), and appropriately so, since the Thunderbird bar was open to the public. Mr. Finley would not therefore need any additional license or permission to enter. Subsection (3) refers to premises not open to the public—a tenant's apartment or condominium, a homeowner's house, a private membership club, a restaurant kitchen, or a grocery store stockroom, for example.

Mr. Finley makes two arguments, one legal and one factual. He first contends that the State had the burden to disprove his license to enter the Thunderbird bar. He did not have the burden to affirmatively prove his right to enter. We agree. *R.H.*, 86 Wn. App. at 810-12. Next, he argues that the State failed to prove revocation of the license. Specifically, he claims the State failed to prove that Ms. Barrett, the bartender, had the authority to "eighty-six" him from the bar. We disagree.

We take first the legal prong of his argument. Our review is de novo. *State v. Martin*, 137 Wn.2d 774, 788, 975 P.2d 1020 (1999) (questions of law reviewed de novo).

█ It is a defense to criminal trespass that "[t]he premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises[.]" RCW 9A.52-.090(2).[3]

If the premises were open to the public and Mr. Finley complied with "all lawful conditions," he could access or

---

[3]"The statute is silent as to the burden of proof on the defense and the law is in a state of change." WPIC 19.07 cmt. "It appears that the State does bear the burden of proof with regard to [the statutory] defenses" of RCW 9A.52.090. WPIC 19.07 cmt. (Supp. 1998) (citing *R.H.*, 86 Wn. App. 807).

remain on the premises. This "privilege" negates the requirement for criminal trespass that the entry be unlawful. Because it does, the State must then prove the absence of the defense beyond a reasonable doubt. *R.H.*, 86 Wn. App. at 812 (rejecting State's argument that public premises is an affirmative defense that the defendant must prove) (citing RCW 9A.52.080(1), .010(3)).

We turn next to Mr. Finley's sufficiency argument.

■ The test for determining the sufficiency of the evidence is whether, after viewing the evidence and reasonable inferences in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). By making the claim, Mr. Finley admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Id.* Circumstantial evidence and direct evidence are, of course, equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A reasonable trier of fact could conclude beyond a reasonable doubt that Mr. Finley failed to comply with the lawful conditions of access to or remaining in the Thunderbird. *See R.H.*, 86 Wn. App. at 812. Mr. Finley first suggests that he was prohibited only from entering the bar portion of the building. He did not understand Ms. Barrett and the officers' orders to be that he could not enter the entire premises of the Thunderbird Restaurant and Bar.

■ What Mr. Finley "understood" or "believed" is not relevant to whether his presence was unlawful under the public premises defense, RCW 9A.52.090(2). The pertinent viewpoint is that of a "rational trier of fact," not Mr. Finley. *R.H.*, 86 Wn. App. at 812-13.

Moreover, Ms. Barrett and the officers told Mr. Finley he could not return to the entire premises of the Thunderbird. Report of Proceedings at 25, 44-45, 68. Officer Willis found Mr. Finley standing in the doorway of the bar. Report of Proceedings at 26-27. The restaurant was closed. His claim then that he was in the restaurant, not the bar, is specious.

A reasonable trier of fact could conclude beyond a reasonable doubt that Mr. Finley knowingly entered or remained unlawfully in the Thunderbird. *See R.H.*, 86 Wn. App. at 812. Mr. Finley entered the Thunderbird bar. Ms. Barrett asked Mr. Finley to leave twice. She and the officers explained to Mr. Finley that he could not return to the Thunderbird Restaurant and Bar. Report of Proceedings at 9-11, 25, 48-49, 71. Mr. Finley told the officer "he wasn't in here" as Officer Willis was escorting him out. Report of Proceedings at 27.

Mr. Finley argues that the State failed to prove Ms. Barrett had the authority to exclude him from the Thunderbird. *See State v. R.H.*, 86 Wn. App. at 811. Ms. Barrett testified "[m]y authority is that if anybody who is in there and I don't want them in there they have to leave, you know." Her testimony is unrefuted and sufficient. *Salinas*, 119 Wn.2d at 201; *R.H.*, 86 Wn. App. at 812.

Mr. Finley relies on *State v. Pentecost* for the proposition that absent evidence of a delegation of authority, only the owner or tenant of real property has the right to exclude others. *State v. Pentecost*, 64 Wn. App. 656, 825 P.2d 365 (1992). His reliance is misplaced. There the court reviewed the denial of a suppression motion. The question before the court was whether a trespasser has a right to privacy in items left around his campsite on property he neither owned nor leased. The answer is he does not because of the homeowner's or tenant's right to exclude others from the curtilage of a residence. *Id.* at 659.

We therefore affirm the decision of the trial court.

KURTZ, A.C.J., and KATO, J., concur.

Review denied at 139 Wn.2d 1027 (2000).