IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>  v.<br><br>JAIME KRISTIN SCHULTZ,<br><br>        Appellant. | No. 79869-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

LEACH, J. — Jaime Schultz appeals her conviction for one count of criminal trespass in the second degree and the imposition of discretionary community custody fees. Schultz argues the jury instructions misstated the law, confused the jury, and impermissibly reduced the State's burden of proof. We agree the instructions did not accurately describe the State's burden of proof. We reverse and remand for a new trial. Schultz also argues, and the State concedes, the trial court should not have imposed community custody fees. We agree and remand to strike the community custody fees.

BACKGROUND

On March 31, 2017, Mary Land saw Jaime Schultz walking around and looking at houses in her North Seattle neighborhood. Land saw Schultz walk on to Susannah Everlund's property while looking through the house's basement windows. Everlund's house had a "for sale" sign in the yard, but she still occupied the house. Land thought Schultz could be looking to steal packages from her

Citations and pin cites are based on the Westlaw online version of the cited material.

neighbor's front doors and called 911. Land told the dispatcher that Schultz had looked on porches and in windows, but she had not tried to open the doors.

Everlund was driving home from an outing while Land was on the phone with the dispatcher. Land flagged Everlund down and said, "There's a woman prowling in your backyard. And I watched her. I just called 911."

Everlund got out of her car, looked down the side of her house, and saw Schultz walking toward her from behind the house. Everlund asked Schultz if she could help her. Schultz responded, "I'm just looking at the house." Everlund said, "we don't have any open house today." Then, Schultz started to walk away from the house and proceeded down the street.

Seattle Police officers arrived at Everlund's house. Everlund and Land pointed the officers in Schultz's direction. The officers "immediately detained" Schultz and "she was very cooperative." Schultz told the officers she was looking at the house because it was for sale and denied any intent to break into it. The officers arrested Schultz for criminal trespass.

Land testified that it was reasonable for people to look at houses for sale and to grab fliers. She said that while most people would not look inside a home for sale, because that would be intrusive, some people might take a quick look inside a window.

Everlund testified that no one else had entered her property while it was for sale. Everlund agreed there was no sign that Schultz damaged or tampered with the house. No one testified that Schultz attempted to break into the house.

2

The jury found Schultz guilty on all four counts of second degree identity theft unrelated to the trespass charge and one count of second degree criminal trespass. At a bench trial, the court found Schultz guilty of two counts of bail jumping.

Schultz appeals her conviction of criminal trespass and the imposition of discretionary community custody fees.

ANALYSIS

Instructional Error

Schultz contends the jury instructions relating to the criminal trespass charge were confusing and it also misstated the legal standard. The State responds that because defense counsel did not object to the challenged jury instructions at trial, this court should not consider her claims. RAP 2.5(a) provides that we "may refuse to review any claim of error which was not raised in the trial court," unless the appellant can show there is an error and that error is a "manifest error affecting a constitutional right."[1] Because Schultz did not object to the jury instructions,[2] we must determine whether Schultz's instruction claims involve a "manifest error affecting a constitutional right."[3]

We do not "assume the alleged error is of constitutional magnitude."[4] The appellant must identify a constitutional error and show how that error affected their

---

[1] State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).
[2] The State asserts Schultz's counsel objected to the middle paragraph of Jury Instruction Number 8, but the record shows it was the State that objected to the middle paragraph.
[3] RAP 2.5(a)(3); O'Hara, 167 Wn.2d at 98.
[4] O'Hara, 167 Wn.2d at 98-99.

3

rights.[5]  "To satisfy the constitutional demands of a fair trial, the jury instructions, when read as a whole, must correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present his theory of the case."[6]  "Failure to properly instruct the jury on an element of a charged crime is an error of constitutional magnitude which may be raised for the first time on appeal."[7]  But, if "the instructions properly inform the jury of the elements of the charged crime, any error in further defining terms used in the elements is not of constitutional magnitude."[8]

If an appellant shows that an error of constitutional magnitude occurred, we next determine whether the error was manifest, which requires a showing of actual prejudice.[9]  To do this, the appellant must show the error had practical and identifiable consequences at trial.[10]  To determine whether the consequences are practical and identifiable, we place ourselves "in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error."[11]

If we determine an error is manifest, we conduct a harmless error analysis.[12]  "[T]he exception does not help a defendant when the asserted constitutional error

---

[5] State v. Gordon, 172 Wn.2d 671, 676, 260 P.3d 884 (2011).
[6] O'Hara, 167 Wn.2d at 105 (citing State v. Mills, 154 Wn.2d 1, 7, 109 P.3d 415 (2005)).
[7] State v. Roggenkamp, 153 Wn.2d 614, 620, 106 P.3d 196 (2005) (citing State v. Stein, 144 Wn.2d 236, 241, 27 P.3d 184 (2001)).
[8] State v. Stearns, 119 Wn.2d 247, 250, 830 P.2d 355 (1992).
[9] O'Hara, 167 Wn.2d at 99.
[10] Gordon, 172 Wn.2d at 676.
[11] O'Hara, 167 Wn.2d at 100.
[12] O'Hara, 167 Wn.2d at 105; U.S. CONST. amend. XIV; Const. art. I, § 22.

is harmless beyond a reasonable doubt."[13]  In a criminal case, an appellate court presumes a constitutional error prejudiced the defendant and the prosecution has the burden of showing that the constitutional error was harmless.[14]

Two cases illustrate application of the harmless error rule.  In State v. O'Hara, the Washington Supreme Court determined the trial court's failure to include the entire statutory definition of malice in the jury instruction was not a manifest error affecting a constitutional right because the State was not relieved of its burden of proving the elements of the crime and disproving the elements of the defense.[15]

In State v. Ackerman, the petitioner alleged "the jury instructions potentially diluted the State's burden by incorrectly conveying the elements of self-defense."[16] We determined this was an error affecting a constitutional right.[17]  We also determined the petitioner had shown the error had a practical and identifiable consequence on the jury's deliberations, so it was a manifest error affecting a constitutional right that was reviewable despite being raised for the first time on appeal.[18]  Because the instructions did not make the defense manifestly apparent to the jury, we could not find the error harmless.[19]

---

[13] Salas, 127 Wn.2d 173, 182, 897 P.2d 1246 (1995).
[14] State v. Coristine, 177 Wn.2d 370, 380, 300 P.3d 400 (2013).
[15] O'Hara, 167 Wn.2d at 104-108.
[16] 11 Wn. App. 2d 304, 310, 453 P.3d 749 (2019).
[17] Ackerman, 11 Wn. App. 2d at 309.
[18] Ackerman, 11 Wn. App. 2d at 309.
[19] Ackerman, 11 Wn. App. 2d at 314.

RCW 9A.52.080(1) provides "A person is guilty of criminal trespass in the second degree if he or she knowingly enters or remains unlawfully in or upon premises of another." RCW 9A.52.090(3) provides a defense to criminal trespass where "[t]he actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him or her to enter or remain." When a defendant asserts their entry was permissible under RCW 9A.52.090(3), the State has the burden of proving beyond a reasonable doubt the defendant lacked a license to enter because this defense negates an element of the crime of trespass.[20]

Jury instruction number 18 told the jury what it must find to convict Schultz of criminal trespass. But, no instruction told the jury about the "reasonably believed" statutory defense. And, no instruction told the jury of the State's burden to disprove this defense. Because the instructions relieved the State of its burden of disproving the statutory defense, this instructional error is a manifest error affecting a constitutional right that Schultz may raise for the first time on appeal.

Next, we consider whether under a harmless error analysis, the instructional error was harmful and prejudicial. We find that it was.

"In order to hold that a jury instruction error was harmless, 'we must conclude beyond a reasonable doubt that the jury verdict would have been the

---

[20] City of Bremerton v. Widell, 146 Wn.2d 561, 570, 51 P.3d 561 (2002); State v. R.H., 86 Wn. App. 807, 812, 939 P.2d 217 (1997).

same absent the error.'"[21]  "An error in jury instructions is presumed prejudicial unless it affirmatively appears to be harmless."[22]  The State bears the burden of demonstrating harmlessness.[23]

The State does not explain why the evidence of the for sale sign does not provide some evidence Schultz "reasonably believed" she was or would be licensed to be on the property.  Nor does the State address Land's testimony that sometimes people peer into windows of homes that are for sale.  And, the State does not address Everlund and the officer's testimony that Schultz said she was only looking at the house because it was for sale.  The State contends Schultz could not possibly believe she was invited or licensed to enter Everlund's property, and ignores the "otherwise privileged to so enter or remain" prong of the jury instruction.

The evidence we have cited, with a proper instruction about the State's burden, could cause a reasonable juror to entertain doubt about whether Schultz could have reasonably believed she was otherwise privileged to enter Everlund's property.  So, the State has not shown beyond a reasonable doubt the instructional error was harmless.  We reverse and remand for a new trial.

---

[21] State v. Bashaw, 169 Wn.2d 133, 146, 234 P.3d 195 (2010), overruled on other grounds by State v. Guzman Nunez, 174 Wn.2d 707, 285 P.3d 21 (2012) (citations omitted).

[22] State v. Espinosa, 8 Wn. App. 2d 363, 363, 438 P.3d 582 (2019) (citing State v. Clausing, 147 Wn.2d 620, 628, 56 P.3d 550 (2002)).

[23] State v. Barry, 183 Wn.2d 297, 303, 352 P.3d 161 (2015) (citing State v. Coristine, 177 Wn.2d 370, 380, 300 P.3d 400 (2013)).

Because we reverse and remand, we decline to address Schultz's other claims of instructional error.

Discretionary Costs

Schultz contends, and the State concedes, the trial court improperly imposed supervision fees because she is indigent. RCW 9.94A.703(2) states the supervision fees are "waivable conditions." The trial court stated it was imposing the mandatory $500 victim penalty assessment and $100 DNA collection fee. But, the judgment and sentence included the requirement that Schultz pay supervision fees. So, we accept the State's concession and remand to strike the supervision fees from the judgment and sentence.

CONCLUSION

We reverse and remand on the issue of criminal trespass because we cannot say that beyond a reasonable doubt the jury verdict would have been the same absent the instructional error. And, we remand to strike the community custody fees.

_____
Leach, J.

WE CONCUR:

_____         _____

8