IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80417-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CARLBERG, JUSTIN ALLEN, | ) | UNPUBLISHED OPINION |
| DOB: 09/30/1991, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Justin Allen Carlberg appeals his conviction for possession of methamphetamine with intent to manufacture or deliver, arguing the trial court should have suppressed drugs seized by the police during an unlawful detention. We affirm.

## FACTS

Shortly after 8:00 p.m. on February 2, 2017, Carlberg walked into the Snohomish Rite Aid store carrying a backpack. He dropped the bag near the store entrance and proceeded through the employee stock room into a bathroom. He stayed in the bathroom for about 20 minutes. The store manager called 911 after she knocked on the door and "asked him to leave several times."

Snohomish County Sheriff's Office deputies responded. The manager told them that Carlberg "would not comply with her multiple requests to leave" and she "wished to have him trespassed." She told the deputies that she confirmed somebody was in the bathroom "because there is a grate on the bottom of the

door that allows you to see basically just the floor in there," and she "could see the same male's feet inside the door."

The deputies approached the bathroom door and saw through the grate that someone was pacing inside the bathroom. They knocked and directed the person to come out.[1] They had to ask "several times." When the door opened, they "immediately recognized" Carlberg from previous contacts, including trespass complaints.[2] They also knew from experience that Carlberg often carried weapons, including "knives and needles." Carlberg was "profusely sweating," red faced, and looked "exhausted." The deputies recognized these as signs of recent drug use; in particular, heroin.

The deputies asked Carlberg if he was armed. Carlberg admitted to having a knife in his pocket and "used needles." The deputies conducted a "protective frisk" by patting down his clothing "to make sure there were no weapons." The deputies first discovered a knife and then a "hard boxy object" about the size of a cell phone. Deputy Christopher Johnson testified that such an object could be a folding firearm, an electronic shock device, or pepper spray. When they removed the object, deputies saw that it was a digital scale with "brown tar residue" on the outside, which they suspected was heroin. The deputies arrested Carlberg for possession of drug paraphernalia. They continued searching Carlberg and found used hypodermic needles with what appeared to

---

[1] Deputy Evan Twedt testified, "I knocked on the door and announced our presence, it's the police and that they need to come out."

[2] Deputy Twedt testified that he had personally "trespassed [Carlberg] from most of [the] major businesses around Snohomish" and "believe[d] that he had been trespassed from Rite Aid" as well.

be blood and trace amounts of heroin inside, as well as "several baggies" containing suspected methamphetamine. Later testing confirmed the white substance in the baggies was methamphetamine.

The State charged Carlberg with possessing a controlled substance with intent to manufacture or deliver. Carlberg moved to suppress the methamphetamine and paraphernalia under CrR 3.6, arguing that the deputies did not have reasonable grounds to seize and detain him. The court denied his motion.

Carlberg stipulated to a bench trial based on agreed documentary evidence. The trial court found him guilty as charged. The court granted Carlberg's request for a residential drug-offender sentencing alternative (DOSA). But Carlberg violated the conditions of his sentence, so the court revoked the DOSA and imposed a standard-range sentence of 16 months' confinement.

Carlberg appeals.

ANALYSIS

Carlberg argues the trial court should have suppressed evidence discovered during the deputies' "protective frisk" because the deputies unlawfully seized and detained him. We disagree.

In reviewing a denial of a motion to suppress, we review the trial court's findings of fact for substantial evidence and the court's conclusions of law de novo. State v. Fuentes, 183 Wn.2d 149, 157, 352 P.3d 152 (2015). We treat unchallenged factual findings as verities on appeal[3] and consider whether those

---

[3] Carlberg does not challenge any of the trial court's findings of fact.

findings support the conclusions of law. State v. Allen, 138 Wn. App. 463, 468, 157 P.3d 893 (2007) (citing State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003); State v. Vickers, 148 Wn.2d 91, 116, 59 P.3d 58 (2002)). The constitutionality of a warrantless detention is a question of law we review de novo. State v. Gatewood, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).[4]

The Washington Constitution prohibits warrantless seizures unless they fall within narrowly drawn exceptions. Art. I, § 7; State v. Arreola, 176 Wn.2d 284, 292, 290 P.3d 983 (2012). A Terry investigative stop is one such exception, allowing an officer to detain a person briefly for questioning if the officer has reasonable suspicion that the person is, or is about to be, engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); Fuentes, 183 Wn.2d at 158; State v. White, 97 Wn.2d 92, 105, 640 P.2d 1061 (1982). We consider an officer's training and experience when determining the reasonableness of a Terry stop. State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991) (citing State v. Mercer, 45 Wn. App. 769, 774, 727 P.2d 676 (1986); State v. Samsel, 39 Wn. App. 564, 570-71, 694 P.2d 670 (1985)).

A person commits the crime of criminal trespass in the second degree if he "knowingly enters or remains unlawfully in or upon the premises of another under circumstances not constituting criminal trespass in the first degree." RCW 9A.52.080(1). "A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2); State v. Green, 157 Wn. App. 833, 844, 239 P.3d

---

[4] Carlberg does not challenge the constitutionality or scope of the "protective frisk," so we do not reach that issue.

1130 (2010).[5]  And a person remains unlawfully in a building by remaining after a license previously extended is "specifically revoked" by someone with authority over the premises.  State v. Davis, 90 Wn. App. 776, 780-81, 954 P.2d 325 (1998).

Carlberg argues deputies unlawfully detained him because "he had [n]ever been warned off of [the property] in the past" and the manager did not "demand" for him to leave, she merely "requested" him to leave.  He cites State v. Finley, 97 Wn. App. 129, 138, 982 P.2d 681 (1999), arguing that the State must show Carlberg had knowledge he was remaining unlawfully on the premises before police could detain him.

In Finley, a bartender told a patron who was harassing his girlfriend to leave several times, but the patron kept returning, even after police officers responded and told him he was not allowed to go back inside.  Finley, 97 Wn. App. at 131-32.  Finley appealed his conviction for criminal trespass in the second degree, arguing the State produced insufficient evidence that his right to remain in a public establishment had been lawfully revoked.  Finley, 97 Wn. App. at 133, 137-38.  Division Three of our court agreed with Finley that at trial, the State had the burden to disprove the statutory defense that " '[t]he premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises.' "  Finley, 97 Wn. App. at 137[6] (quoting RCW 9A.52.090(2)).

Carlberg conflates the State's burden to convict at trial with the reasonable

---

[5] " 'Premises' includes any building."  RCW 9A.52.010(3).

[6] Alteration in original.

suspicion standard used to assess a lawful seizure. Police officers "need not be able to prove all elements of a crime beyond a reasonable doubt before [they] can stop an individual to investigate a suspected crime." State v. Duncan, 146 Wn.2d 166, 179, 43 P.3d 513 (2002). Nor must an officer determine the absence of a defense to a crime before an investigative seizure. State v. Guzman-Cuellar, 47 Wn. App. 326, 331, 734 P.2d 966 (1987).

Here, deputies responded to a 911 call of a suspicious male who locked himself inside the Rite Aid bathroom for 20 minutes and "would not comply with [the manager's] multiple requests to leave." Whether the manager "demanded," "requested," or "told" him to leave is immaterial because all are communications to Carlberg that his presence is unwanted. And when deputies saw Carlberg, they recognized him as someone they had trespassed from various local businesses. Sufficient facts supported reasonable suspicion to seize and detain Carlberg for investigation of criminal trespass.

We hold that the trial court did not err in denying Carlberg's motion to suppress evidence obtained during a lawful detention. We affirm.

_____
Brennan, J.

WE CONCUR:

_____          _____