IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAEL SEGALINE, a single person, ) | No. 76010-6-I |
| ) | |
| Respondent, ) | DIVISION ONE |
| ) | |
| v. ) | |
| ) | |
| THE STATE OF WASHINGTON, ) | PUBLISHED OPINION |
| DEPARTMENT OF LABOR AND ) | |
| INDUSTRIES and ALAN CROFT, ) | |
| ) | |
| Appellants. ) | FILED: July 17, 2017 |

SCHINDLER, J. — The doctrine of qualified immunity shields a government official from civil liability and money damages unless the plaintiff shows violation of a constitutional right that is clearly established at the time of the challenged conduct. The Washington State Department of Labor and Industries and Regional Safety and Health Coordinator William Alan Croft appeal the jury verdict in favor of Michael Segaline on his 42 U.S.C. § 1983 claim against Croft.[1] The Department of Labor and Industries and Croft contend the court erred by denying the motion for judgment as a matter of law on qualified immunity and instructing the jury to decide the legal question of due process. Because Segaline did not show that Croft violated a clearly established right when he

---

[1] This is the third appeal in this case. See Segaline v. Dep't of Labor & Indus., 144 Wn. App. 312, 182 P.3d 480 (2008); Segaline v. Dep't of Labor & Indus., 169 Wn.2d 467, 238 P.3d 1107 (2010); Segaline v. Dep't of Labor & Indus., 176 Wn. App. 1012, 2013 WL 6843617, at *1 (2013).

issued a trespass notice in 2003, the court erred in denying judgment as a matter of law on qualified immunity and dismissal of the 42 U.S.C. § 1983 claim. We reverse the jury verdict on the 42 U.S.C. § 1983 claim and remand to vacate the judgment and award of attorney fees.

## FACTS

The Washington State Department of Labor and Industries (L&I) is responsible for issuing permits for electrical work. In 2003, William Alan Croft worked as the L&I Regional Safety and Health Coordinator for the East Wenatchee office. The L&I Regional Safety and Health Coordinator is responsible for "safety, health, security, ergonomics, [and] emergency management."

Michael Segaline is a licensed electrician and the owner of an electrical contracting company located in East Wenatchee, Horizon Electric Inc. Segaline routinely obtained electrical permits at the L&I East Wenatchee office.

In June 2003, L&I Field Service Coordinator Jeanne Guthrie and L&I Customer Service Representative Jacqueline Sanchez filed "Safety & Health Security Incident Reports" about Segaline's threatening and harassing behavior.

Guthrie filed an incident report about Segaline's behavior on June 9. Guthrie said Segaline called her on June 9 about a "bogus" contractor deposit account. According to Guthrie, Segaline threatened to "bring a tape recorder in and start legal proceedings" and said a "lot of people would be behind bars." Guthrie describes the statements Segaline made as a "[t]hreat."

Sanchez filed an incident report about Segaline's behavior on June 13. Sanchez said Segaline wanted to pay for an electrical permit. When she told Segaline the permit

"had already been paid," Segaline told her that was "not 'his problem, it was L&I's problem,' " and L&I "could not refuse to take his money because it was in the RCW's." Sanchez states Segaline was "very mean and demeaning" and appeared "very frustrated and very red in the face and just very, very upset with me." Sanchez states she is "afraid to help him at the counter as to what he might do or say to me." Sanchez describes Segaline's behavior as "[h]arassment."

Guthrie also filed an incident report about Segaline's behavior on June 13. When Segaline attempted to pay for an electrical permit, Guthrie said she "could not take more money" because he had already paid. Segaline told Guthrie she "could not refuse to take the money." According to Guthrie, Segaline accused her of "not following the RCWs" and said he "would file a tort claim." Guthrie describes Segaline's behavior as "[h]arassment."

According to L&I employee Alice Hawkins, on June 9 and June 13, Segaline was "quite threatening in his verbal language, very aggressive and threatening and intimidating, red faced." Hawkins said Segaline "yell[ed]" and told her "one of us is going to go to jail, that I better get an attorney."

On June 19, L&I Electrical Program Supervisor David Whittle and Croft met with Segaline about the reported incidents. Segaline abruptly left the meeting and demanded to speak to Guthrie. Croft called the police and told Segaline to leave the office. Croft said Segaline appeared "like a balloon that was waiting to pop" with "a real rage going on underneath." Segaline left when the police arrived. One of the police officers suggested Croft draft a trespass notice for the police to "enforce in the future."

Croft had never issued a trespass notice before and was uncertain whether he could do so for a state agency office. The "primary" reason Croft wanted to issue a trespass notice was to protect "the safety of our staff." Croft contacted the Wenatchee Police Department Crime Prevention Unit and the Washington State Patrol trooper assigned to assist L&I with workplace violence about the procedure for issuing a trespass notice. Croft also asked the trooper to obtain an opinion from the Washington State Attorney General's Office. In addition, Croft reviewed the Revised Code of Washington provisions on trespass and the "workplace violence policy."

Croft drafted a "Trespass Notice." The Notice states Segaline engaged in "disruptive behavior" and "harassment of staff" and he is not "permitted, invited, licensed or otherwise privileged to enter or remain at the [East Wenatchee office]." The Notice states Segaline can "have this notice terminated" by obtaining the written approval of Whittle. The Trespass Notice provides, in pertinent part:

TRESPASS NOTICE

Date and Time Issued:    6/30/03    9:30 AM

Trespassed Subject: Michael J. Segaline      Date of Birth: 10/20/1956

. . . .

Trespassed for: disruptive behavior, harassment of staff and failure to follow instructions for contacting the department.

The above individual has been trespassed from the Department of Labor and Industries, 519 Grant Road, East Wenatchee, WA 98802.

Failure to comply with this notice may result in prosecution for trespass.

The trespass notice was read by or to, and/or a copy of the notice provided to the above individual. The above individual is no longer permitted, invited, licensed or otherwise privileged to enter or remain at the Department of Labor and Industries above location.

. . . .

> To have this notice terminated, the subject must secure the written approval of David Whittle, Electrical Supervisor, prior to re-entry of the East Wenatchee Department of Labor and Industries service location. This trespass notice remains in effect until this approval is obtained.

Hawkins handed Segaline the Trespass Notice on June 30. When Segaline refused to accept the Notice, an L&I employee called the police. After a police officer handed Segaline a copy of the Trespass Notice, Segaline left the L&I office.

On August 20, Segaline called Guthrie and "yelled" at her about an "emergency permit." The next day, Segaline went to the office and an L&I employee handed him the permit. When Segaline went to the office again on August 22, an L&I employee called the police. The police arrested Segaline. The city of Wenatchee (City) charged Segaline with criminal trespass. The City later dismissed the criminal trespass charge.

On August 8, 2005, Segaline filed a lawsuit against the Washington State Department of Labor and Industries (Department). The lawsuit alleged (1) negligent infliction of emotional distress, (2) intentional infliction of emotional distress, (3) malicious prosecution, (4) negligent supervision, and (5) violation of his civil rights.

A year later on August 3, 2006, Segaline filed a motion to amend the complaint to name Croft as a defendant and assert a 42 U.S.C. § 1983 claim against Croft alleging violation of his liberty interest to be present in a public place without due process. The court granted the motion to amend.

The Department filed a motion for summary judgment dismissal of the 42 U.S.C. § 1983 claim against Croft. The court ruled the 42 U.S.C. § 1983 claim was barred by the three-year statute of limitations. The court also ruled, "Croft is entitled to summary

judgment in that he did not violate plaintiff's constitutional rights, and Croft is entitled to qualified immunity from suit."

The Department filed a motion for summary judgment dismissal of the claims alleging intentional and negligent infliction of emotional distress, negligent supervision, and malicious prosecution. The trial court ruled the Department was immune from suit under a statute that protects a person from liability for communicating a complaint to a government agency, RCW 4.24.510. We affirmed dismissal of the 42 U.S.C. § 1983 claim against Croft and the claims against the Department. Segaline v. Dep't of Labor & Indus., 144 Wn. App. 312, 317, 182 P.3d 480 (2008). The Washington Supreme Court granted review. Segaline v. Dep't of Labor & Indus., 165 Wn.2d 1044, 205 P.3d 132 (2009).

The Supreme Court held that because RCW 4.24.510 did not apply to a government agency, the Department was not immune from suit. The court reversed summary judgment dismissal of the claims against the Department alleging intentional infliction of emotional distress, negligent supervision, and malicious prosecution. Segaline v. Dep't of Labor & Indus., 169 Wn.2d 467, 479, 238 P.3d 1107 (2010).[2] The court affirmed dismissal of the 42 U.S.C. § 1983 claim against Croft as barred by the statute of limitations. Segaline, 169 Wn.2d at 479. In a footnote, the court declined to address for the first time on appeal Segaline's argument that the 42 U.S.C. § 1983 claim was "timely under the continuing violation doctrine." Segaline, 169 Wn.2d at 476 n.8.

On remand, Segaline argued the 42 U.S.C. § 1983 claim against Croft was not barred by the statute of limitations on a continuing violation theory. In a letter ruling, the

_____

[2] Segaline did not seek review of dismissal of his negligent infliction of emotional distress claim. Segaline, 169 Wn.2d at 472 n.2.

trial court states the Supreme Court decision affirming dismissal of the 42 U.S.C. § 1983 claim against Croft as untimely is "the law of this case." The court states it is "too late to now raise the continuing violation theory." The court entered an order denying the statute of limitations motion on the 42 U.S.C. § 1983 claim against Croft.

The Department filed a motion for summary judgment dismissal of the claims for intentional infliction of emotional distress, negligent supervision, and malicious prosecution. In response, Segaline conceded there was no evidence to support the claim for intentional infliction of emotional distress. The court granted the motion. The court entered an order dismissing the lawsuit against the Department and Croft. Segaline appealed. We affirmed dismissal of the negligent supervision claim but concluded material issues of fact precluded summary judgment on the malicious prosecution claim. Segaline v. Dep't of Labor & Indus., 176 Wn. App. 1012, 2013 WL 6843617, at *7 (2013). We held the law of the case doctrine did not preclude the trial court from considering the continuing violation theory. Segaline, 2013 WL 6843617, at *9. We remanded to the trial court to exercise its discretion and decide whether to allow Segaline to raise the continuing violation theory. Segaline, 2013 WL 6843617, at *9.

On remand, the case was assigned to a different judge. Segaline filed a motion arguing the evidence showed the claim against Croft under 42 U.S.C. § 1983 was a continuing violation that was not barred by the statute of limitations. Segaline also argued there were material issue of fact about whether Croft was entitled to qualified immunity. Specifically, whether Croft "knew that the 'no trespass' notice might violate Mr. Segaline's rights." The Department argued there was no evidence of a continuing violation and the 42 U.S.C. § 1983 claim against Croft was barred by the statute of

7

limitations. The Department also argued that as a matter of law Croft was entitled to qualified immunity.

The court ruled there were material issues of fact as to whether the continuing violation theory applied and whether Croft was entitled to qualified immunity. The order states, in pertinent part:

> The court rules that there is a genuine issue of material fact that the continuing violation theory applies and the 42 USC 1983 action against Alan Croft will be allowed to be presented at trial and argued to have been timely filed. The court finds that there is a genuine issue of material fact whether Alan Croft is entitled to qualified immunity.

The Department filed a motion for reconsideration. The Department asserted that because Segaline did not carry his burden of presenting "case law that existed at the time when the no trespass notice was issued that would have informed Mr. Croft that his issuance of the no trespass order was a clear violation of due process," Croft was entitled to qualified immunity as a matter of law. The court denied the motion. The case proceeded to trial on the malicious prosecution claim against the Department and the 42 U.S.C. § 1983 claim against Croft.

At the conclusion of the evidence, the Department filed a CR 50 motion to dismiss the malicious prosecution claim and the 42 U.S.C. § 1983 claim against Croft. The Department argued the evidence established probable cause to arrest Segaline for violating the Trespass Notice.

> [T]here was an abundance of probable cause in [the arresting officer]'s testimony as he indicated the dangerousness, L & I employees appearing afraid, L & I employees hiding behind walls as if Mr. Segaline would shoot them, the irrational demands of talking to the Attorney General of the State of Washington or he would return.
> . . . .
> . . . There has been no evidence of malice as legally required to show ill will, hostility, improper motives, or to gain private advantage.

8

The Department asserted that because Segaline did not present evidence or case law to show the decision Croft made in 2003 to issue the Trespass Notice violated a clearly established constitutional right, Croft was entitled to qualified immunity and dismissal of the 42 U.S.C. § 1983 claim as a matter of law.

> In addition, plaintiff has not fulfilled the burden to establish what rights Mr. Croft knew he was clearly violating in regards to issuing that trespass notice. There's also been no case law that this Court has that establishes the issuing of a trespass notice was a clear violation of any rights. We know that Mr. Croft consulted law enforcement on at least two different times, retail security, the Assistant Attorney General. He reviewed the law, he reviewed Labor & Industries' policies, he acted as a reasonable official in his position as a safety and health coordinator. He is entitled to qualified immunity, and if the Court found that, there would be no civil rights claims remaining.

The court denied the CR 50 motion to dismiss but reserved ruling on the 42 U.S.C. § 1983 claim. The court ruled, in pertinent part:

> Now, as to the motion to dismiss the [42 U.S.C. § 1983] action, I am denying that motion as well. I am not today telling you, at least at this time, what matters are going to be allowed to be submitted [to] the jury as far as claims of how the plaintiff's constitutional rights were violated; however, in terms of deciding whether there is a sufficient basis to allow this matter to go forward, construing the evidence in the light most favorable to the plaintiff, I'm determining that there is, and so I'm denying the motions at this time. Although as I said, we've got lots of decisions to make and lots of argument that's going to go forward. I'll be ruling on those at some later time.

The court later ruled Segaline did not meet his burden of showing Croft violated a clearly established right in 2003 when he issued the Trespass Notice. The court ruled the jury would not consider whether the Trespass Notice violated clearly established law. But instead of dismissing the 42 U.S.C. § 1983 claim against Croft as barred by qualified immunity, the court ruled the jury would decide whether the Trespass Notice

violated due process. The court ruled, in pertinent part:

> I am going to rule and find that the trespass notice was not in 2003 an established legal procedure. There was not an established legal procedure. There was — there has already been testimony that there was discussion about what can or can't be done, what should or should not be done, and there's been argument by the plaintiff that it's clear now, based on the Green case, 2010,[3] that there were mistakes made.
> In ruling that I believe that was an ongoing issue that was not resolved in 2003. I intend to instruct the jury in some way, shape or form that the legal requirements of the trespass notice is not an issue for the jury to consider. There may be some argument about the procedure of giving the notice or telling Mr. Segaline that he could not come to the office of Labor & Industries in East Wenatchee. I'll address that more in a moment. But I am not going to instruct as to an alleged violation of [42 U.S.C. § 1983] that the trespass notice was legally ineffective.
> . . . .
> Having said that, however, I believe that there still is a [42 U.S.C. § 1983] claim that I'm going to allow to go forward, and that is, and I hesitate to say that I've got all this absolutely worked out in my own mind, but I'll just tell you in general terms how I see that. It's a due process claim under the Fourteenth Amendment[4] . . . that the decision to tell him that he could not come there did not allow him appropriate remedial — I don't want to use the term appeal, but an appropriate redress to address that.

The court instructed the jury that Segaline claimed that "by directing him not to come to the L&I office, Alan Croft deprived Michael Segaline of rights without due process of law as guaranteed by the Fourteenth Amendment to the Constitution."

The court instructed the jury that it could consider the timing of the Trespass Notice but could not "consider issues as to the legalities or form of the notice." The court instructed the jury that to prevail on the 42 U.S.C. § 1983 claim, Segaline must show that from June 2003 through October 2003, Croft deprived him of his liberty

---

[3] State v. Green, 157 Wn. App. 833, 239 P.3d 1130 (2010).

[4] U.S. CONST., amend. XIV.

10

interest without due process.[5] Over the objection of the Department, the court

instructed the jury on the legal factors to consider in deciding whether Croft violated due

process.

The court instructed the jury that to prevail on the malicious prosecution claim,

Segaline must prove there was no probable cause to charge him with criminal trespass

and malice.[6]

By special verdict, the jury found in favor of the Department on the malicious

prosecution claim. The jury found in favor of Segaline on the 42 U.S.C. § 1983 claim.

The jury found Croft "violate[d] Michael Segaline's Fourteenth Amendment Right to

enter a public office." The jury awarded Segaline $203,000 in economic damages and

$750,000 in noneconomic damages.

The Department filed a motion for judgment as a matter of law. The Department

argued that because the court ruled Segaline did not meet his burden to show Croft

violated a clearly established right, as a matter of law Croft was entitled to qualified

---

[5] Jury instruction 12 states, in pertinent part:

To prevail on his [42 U.S.C. § 1983] claim Michael Segaline must prove each of the following by a preponderance of the evidence:

That Alan Croft subjected, or caused Michael Segaline to be subjected, to deprivation, of his liberty interest to enter the East Wenatchee Department of Labor and Industries by keeping him out of the East Wenatchee Department of Labor and Industries from approximately June through October, 2003;

That Alan Croft was acting under color of law; You are instructed that the parties agree that Alan Croft was acting under color of law;

That Alan Croft acted intentionally; and

That Alan Croft did not provide Michael Segaline with due process prior to depriving him of his interest.

[6] Jury instruction 15 states, in pertinent part:

There was no probable cause for the institution or continuation of the prosecution;

The proceedings were brought or continued through malice; and

Mr. Segaline suffered injury or damage as a result of the prosecution.

The court instructed the jury that "probable cause" means "facts and circumstances known to an employee or officer that are sufficient to warrant a reasonably cautious person to believe that an offense has been or is being committed."

immunity and dismissal of the 42 U.S.C. § 1983 claim.

> Here, the Court ruled before the conclusion of the trial that Alan Croft was entitled to qualified immunity as to the contents of the trespass notice. However, there is no case that supports the application of qualified immunity in this fashion. The government official either has qualified immunity as to a stated act or not. The contents of the trespass notice cannot be separated from its issuance or timing. If Alan Croft has qualified immunity as to the trespass notice he is entitled to qualified immunity for the actions that flowed from it. . . . Absent a clearly established right, Mr. Croft is entitled to qualified immunity as a matter of law. . . .
>
> . . . Mr. Segaline has not and cannot come forward with any facts or case law that satisfies the shifting burden to establish the law was clearly established in June of 2003 determining what process was due. There simply was no law that Alan Croft knew or should have known that would prohibit his attempt to protect his employees. Alan Croft is entitled to qualified immunity and the jury's verdict should be vacated.

The court denied the motion for judgment as a matter of law.

## ANALYSIS

The Department and Croft (collectively, the Department) appeal the verdict in favor of Segaline on the 42 U.S.C. § 1983 claim. The Department contends the court erred by denying the motion for judgment as a matter of law and dismissal of the 42 U.S.C. § 1983 claim and by instructing the jury on due process. The Department asserts Croft was entitled to qualified immunity as a matter of law because Segaline did not meet his burden to show that Croft violated a clearly established right when he issued the Trespass Notice in 2003 in response to arguably threatening and harassing behavior. We agree.

We review a trial court decision on a motion for judgment as a matter of law de novo. Paetsch v. Spokane Dermatology Clinic, PS, 182 Wn.2d 842, 848, 348 P.3d 389 (2015); Alejandre v. Bull, 159 Wn.2d 674, 681, 153 P.3d 864 (2007). To grant judgment as a matter of law, the court must construe all facts and reasonable inferences in favor

12

of the nonmoving party and conclude as a matter of law that " 'there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party.' " Paetsch, 182 Wn.2d at 848 (quoting Indus. Indem. Co. of the Nw. v. Kallevig, 114 Wn.2d 907, 915-16, 792 P.2d 520 (1990)).

42 U.S.C. § 1983 provides a cause of action against an individual who, acting under color of state law, deprives a person of a federally protected constitutional or statutory right.[7] Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 508, 110 S. Ct. 2510, 110 L. Ed. 2d 455 (1990); Gonzaga Univ. v. Doe, 536 U.S. 273, 284, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002); Durland v. San Juan County, 182 Wn.2d 55, 70, 340 P.3d 191 (2014).

The doctrine of qualified immunity shields government officials from civil liability and money damages so long as " 'their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); Hernandez v. Mesa, No. 15-118, 2017 WL 272240917, at *4 (U.S. S. Ct. June 26, 2017) (per curiam). Qualified immunity balances the need to hold a government official accountable and the need to shield an official from liability when performing duties reasonably. Pearson, 555 U.S. at 231.

---

[7] 42 U.S.C. § 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Qualified immunity is " 'immunity from suit rather than a mere defense to liability.' " Pearson, 555 U.S. at 231 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)); White v. Pauly, ___ U.S. ___, 137 S. Ct. 548, 551-52, 196 L. Ed. 2d 463 (2017) (per curiam). Therefore, the United States Supreme Court has " 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' " Pearson, 555 U.S. at 232 (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (per curiam)).

Qualified immunity shields a government official from liability unless the plaintiff shows (1) the official violated a constitutional right, and (2) the right was " 'clearly established' " at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (quoting Harlow, 457 U.S. at 818); Gallegos v. Freeman, 172 Wn. App. 616, 631, 291 P.3d 265 (2013). The doctrine of qualified immunity applies regardless of whether a government official's error is " 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' " Pearson, 555 U.S. at 231 (quoting Groh v. Ramirez, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004)).

Segaline alleged that by issuing the Trespass Notice, Croft violated his liberty interest to be present in a public place without due process. Federal courts recognize a protected liberty interest to enter and remain in a public place. See Vincent v. City of Sulphur, 805 F.3d 543, 548 (5th Cir. 2015) ("there is a general right to go to or remain on public property for lawful purposes"); Kennedy v. City Of Cincinnati, 595 F.3d 327, 336 (6th Cir. 2010) (plaintiff had a liberty interest to remain in a public place); Vasquez v. Rackauckas, 734 F.3d 1025, 1042-43 (9th Cir. 2013) (there is a liberty interest in "use

of public places").[8]

Construing the evidence and reasonable inferences in favor of Segaline, the facts show he had a liberty interest to enter and remain in the L&I East Wenatchee office. But deprivation of a liberty interest is not unconstitutional unless it occurred without due process. Zinermon v. Burch, 494 U.S. 113, 125-26, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). Procedural due process prohibits the state from infringing on an individual's protected liberty interests without notice and an opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 332-33, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); Fuentes v. Shevin, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972).

> In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.

Zinermon, 494 U.S. at 125[9] (quoting U.S. CONST. amend. XIV, § 1).

"Whether an asserted federal right was clearly established at a particular time" is a question of law we review de novo. Elder v. Holloway, 510 U.S. 510, 516, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994).

The dispositive question is whether issuing the Trespass Notice in 2003 violated a clearly established right to due process. The qualified immunity analysis "is limited to 'the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question." Hernandez, 2017 WL 272240917, at *4 (quoting White, 137 S. Ct. at 550). "Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant." Hernandez, 2017 WL

---

[8] We note the liberty interest to be in a public place is not unfettered. See Reza v. Pearce, 806 F.3d 497, 505-06 (9th Cir. 2015) (government official may remove an individual from a limited public forum if the individual is disruptive).

[9] Emphasis in original.

272240917, at *4. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " Mullenix v. Luna, ___ U.S. ___, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)).

A government official's conduct violates a clearly established right only when, at the time of the challenged conduct, " '[t]he contours of [a] right [are] sufficiently clear' " that every " 'reasonable official would [have understood] that what he is doing violates that right.' " Ashcroft, 563 U.S. at 741[10] (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). There must be either " 'controlling authority' " or a "robust 'consensus of cases of persuasive authority.' " Ashcroft, 563 U.S at 741-42 (quoting Wilson v. Layne, 526 U.S. 603, 617, 119 S. Ct 1692, 143 L. Ed. 2d 818 (1999)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." Ashcroft, 563 U.S. at 741.

The Supreme Court has " 'repeatedly told courts . . . not to define clearly established law at a high level of generality.' " Mullenix, 136 S. Ct. at 308[11] (quoting Ashcroft, 563 U.S. at 742); White, 137 S. Ct. at 552. The inquiry " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " Mullenix, 136 S. Ct. at 308[12] (quoting Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)). The question is " 'whether the violative nature of particular conduct is clearly established.' " Mullenix, 136 S. Ct. at 308[13] (quoting Ashcroft, 563 U.S. at 742); White, 137 S. Ct. at 552; see Brosseau, 543 U.S. at 198-99.

---

[10] Alterations in original.
[11] Alteration in original.
[12] Internal quotation marks omitted.
[13] Emphasis in original.

16

In Anderson, the Supreme Court cites the right to due process as an example of a right that is at too high of a level of generality to meet the test of a clearly established right. Anderson, 483 U.S. at 639.

> [T]he right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause . . . violates a clearly established right. . . . But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of [qualified immunity].

Anderson, 483 U.S. at 639 (quoting Harlow, 457 U.S. at 818-19). Because procedural due process analysis requires balancing a number of legal factors, "the law regarding procedural due process claims 'can rarely be considered "clearly established" at least in the absence of closely corresponding factual and legal precedent.' " Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 983 (9th Cir. 1998) (quoting Baker v. Racansky, 887 F.2d 183, 187 (9th Cir.1989)); see also Shinault v. Hawks, 782 F.3d 1053, 1059 (9th Cir. 2015) (same).

The cases cited by Segaline do not establish the level of specificity needed to place "beyond debate" the proposition that the decision in 2003 to issue the Trespass Notice violated the right to due process. Ashcroft, 563 U.S. at 741. Segaline cites a number of cases for the proposition that there is a liberty interest to remain in a public place. Those cases do not address whether a government official violates an individual's right to due process by issuing a trespass notice in response to arguably threatening and harassing behavior.

Segaline relies heavily on a 1996 federal district court case, Wayfield v. Town of Tisbury, 925 F. Supp. 880 (D. Mass. 1996), to argue he met his burden to show a clearly established right to due process. In Wayfield, the plaintiff argued on summary

judgment that the decision to suspend his library privileges without a hearing violated due process. Wayfield, 925 F. Supp. at 881. The court concluded that under Mathews, the library "did not afford [the plaintiff] adequate due process." Wayfield, 925 F. Supp. at 888-89 (citing Mathews, 424 U.S. at 321). The district court decision does not establish Croft violated a clearly established right. Wayfield, 925 F. Supp. at 889. The decision of a district court "is not 'controlling authority' in any jurisdiction, much less in the entire United States," and "falls far short of . . . a robust 'consensus of cases of persuasive authority.' " Ashcroft, 563 U.S. at 741-42 (quoting Wilson, 526 U.S. at 617).

Segaline also cites a number of federal and state cases, including State v. Green, 157 Wn. App. 833, 239 P.3d 1130 (2010), that were decided after 2003[14] to argue Croft violated a clearly established constitutional right. But as previously noted, the court does not "consider later decided cases" in determining whether a right was clearly established at the time of the challenged conduct. Plumhoff v. Rickard, ___ U.S. ___, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014); Brosseau, 543 U.S. at 200 n.4 (cases postdating the conduct in question are "of no use in the clearly established inquiry"); Gallegos, 172 Wn. App. at 634 n.12.

We conclude the trial court correctly ruled that Segaline did not establish that Croft violated a clearly established constitutional right to due process when he issued the Trespass Notice in 2003. The court ruled neither the facts nor Green showed a clearly established right to due process.

Segaline concedes Green was decided in 2010 but argues the cases cited in Green that were decided before 2003 show a clearly established right to notice and an

---

[14] See, e.g., Kennedy, 595 F.3d at 337-38; Hunger v. Univ. of Haw., 927 F. Supp. 2d 1007, 1016 (D. Haw. 2013); Anthony v. State, 209 S.W.3d 296, 307-08 (Tex. App. 2006).

opportunity to be heard before issuing a trespass notice. The cases cited in Green do not support his argument.

In Green, a school district issued a no-trespass notice based on the disruptive behavior of the mother of a student. Green, 157 Wn. App. at 838. The notice prohibited the mother from going to her child's elementary school except in limited circumstances. Green, 157 Wn. App. at 838-39. The State charged the mother with criminal trespass. Green, 157 Wn. App. at 841. At trial, an attorney for the school district testified about the reasons for issuing the trespass notice but admitted he had no personal knowledge of the underlying events. Green, 157 Wn. App. at 852. We reversed the conviction. We concluded the testimony did not establish a factual basis to revoke the mother's statutory right to access to the school.[15] Green, 157 Wn. App. at 852-53. We held that "absent a determination based on competent evidence that the restrictions were lawfully imposed and absent minimal notice of due process rights," the State did not prove criminal trespass. Green, 157 Wn. App. at 852 (citing State v. R.H., 86 Wn. App. 807, 813, 939 P.2d 217 (1997)).

The court in Green cited Mathews and Nguyen v. Department of Health, Medical Quality Assurance Commission, 144 Wn.2d 516, 29 P.3d 689 (2001), for general due process principles. Green, 157 Wn. App. at 847. Green states Mathews uses a balancing test "to determine whether additional procedures are required to meet procedural due process requirements." Green, 157 Wn. App. at 847. Green cites

---

[15] RCW 28A.605.020 states:

Every school district board of directors shall, after following established procedure, adopt a policy assuring parents access to their child's classroom and/or school sponsored activities for purposes of observing class procedure, teaching material, and class conduct: PROVIDED, That such observation shall not disrupt the classroom procedure or learning activity.

Nguyen for the proposition that "[p]rocedural due process requires notice and an opportunity to be heard before the government can take a person's liberty or property interests." Green, 157 Wn. App. at 847. The other case cited in Green, R.H., is also unpersuasive and distinguishable.

In R.H., a restaurant manager told several youths who were skateboarding and loitering in the restaurant parking lot to leave, but they did not comply. R.H., 86 Wn. App. 808. R.H. was not part of the group. R.H. arrived at the restaurant later to wait for a friend and eat at the restaurant. R.H., 86 Wn. App. 808-09. At the manager's request, a police officer told all of the youths, including R.H., that they would be arrested for criminal trespass if they did not leave. R.H., 86 Wn. App. 809. When R.H. did not leave, he was arrested and charged with criminal trespass. R.H., 86 Wn. App. 810. The evidence at trial established R.H. repeatedly told the arresting officer he was waiting for another customer and if R.H. had been planning to eat at the restaurant, he had permission to be on the premises. R.H., 86 Wn. App. 811. We held the State did not prove R.H. committed criminal trespass because he complied with " 'all lawful conditions imposed on access.' " R.H., 86 Wn. App. at 812 (quoting RCW 9A.52.090(2)).

Because Croft was entitled to qualified immunity, the court erred in denying the motion for judgment as a matter of law to dismiss the 42 U.S.C. § 1983 claim. Where "the law did not put the [government official] on notice that his conduct would be clearly unlawful," it is improper for a trial court to allow the claim to proceed to trial, even if there is an issue of fact on an alleged constitutional right. Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

Although we need not reach the challenge to instructing the jury on due process, we conclude the court erred by instructing the jury on the legal factors to consider in deciding whether Croft violated due process. Jury instruction 13 states:

> Due Process is a flexible concept and that the procedures required depend upon the facts of a particular circumstance. Due process requires the opportunity to be heard at a meaningful time in a meaningful manner. You may consider the timing of the trespass notice but are not to consider issues as to the legalities or form of the notice. In determining the reasonableness of the opportunity for hearing, you should consider;
> The nature of Mr. Segaline's interest;
> The risk of a wrongful deprivation by the procedures, if any, that were used and the value of additional procedures;
> and the government's interest, including the burdens that accompany additional procedures.
> You should also consider whether there was notice and opportunity to be heard available to remedy any wrongful deprivation.

Jury instruction 13 essentially asks the jury to consider the Mathews factors and decide whether as a matter of law, Croft violated Segaline's right to due process.

> What process is due under the Constitution is a legal question that the judge should resolve. The judge then should put to the jury any factual questions relating to the application of that standard.

McGee v. Bauer, 956 F.2d 730, 735 (7th Cir. 1992); see also State v. Chambers, 81 Wn.2d 929, 932, 506 P.2d 311 (1973) (A court errs by asking the jury to resolve "questions of law inherent in the factual situation.").

Because Segaline did not meet his burden to show a clearly established right when Croft issued the Trespass Notice in 2003, as a matter of law Croft was entitled to qualified immunity and dismissal of the 42 U.S.C. § 1983 claim.

We reverse the jury verdict on the 42 U.S.C. § 1983 claim against Croft and remand to vacate the judgment and award of attorney fees.

WE CONCUR:

Schindler, J.

Cox, J.

Becker, J.