

**FILED**
**AUGUST 15, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35751-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETER JOHN ARENDAS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Peter Arendas was belligerent and defiant when ordered to leave a train depot in Wishram, a small town in Klickitat County, which led to charges and convictions for first degree criminal trespass and third degree assault. We affirm his convictions but remand with directions to correct his judgment and sentence to provide that a prohibition on contact with the Burlington Northern Santa Fe (BNSF) Railroad and its properties is a condition to his suspended sentence, not a condition of community custody.

FACTS AND PROCEDURAL BACKGROUND

Following a one-day jury trial, Peter Arendas was found guilty by a Klickitat County jury of first degree trespass and third degree assault. The evidence at trial included the testimony of Eric Young, a locomotive engineer for BNSF, that he

encountered Mr. Arendas sleeping on the floor of a small waiting room at the BNSF

depot in Wishram late on an August night and told him twice, loudly, that he needed to

leave. When Mr. Arendas did not respond to his first demand to leave, Mr. Young

contacted BNSF's railroad police, who in turn contacted the Klickitat County sheriff. A

sheriff's sergeant and deputy responded, allegedly with the intention to do no more than

tell Mr. Arendas he had to leave and escort him from the property.

According to Mr. Young and Sergeant Fred Kilian, one of the responding officers,

Mr. Arendas was alert, hostile, and belligerent immediately upon the arrival of the

officers. Rather than heed their directives that he comply with Mr. Young's request that

he leave, Mr. Arendas hurled profanities. After what Mr. Young estimated was five

minutes of arguing with the officers, Mr. Arendas was arrested and placed in the back of

a patrol car, where he continued to rant. At one point, when Sergeant Kilian reached into

the driver's side of the front seat of the patrol car, Mr. Arendas spat in the sergeant's face,

leading to the charge of third degree assault.

Mr. Arendas chose to represent himself at trial, with standby counsel. He

defended against the trespass charge on the basis that he was a ticketed passenger for an

Amtrak train scheduled to leave the following morning and was therefore not a

trespasser. He denied that Mr. Young ever told him to leave the waiting room before two

police officers and two others came "busting in through the door" to tell him he was

under arrest for trespassing.  Report of Proceedings (RP) at 439.  He denied ever spitting in Sergeant Kilian's face.

Before the trial, Mr. Arendas made several discovery-related motions.  According to Mr. Arendas, he had traveled to Skamania County to see the "Great American Eclipse" on August 21, 2017, after which he planned to take a train to Salt Lake City but was delayed in leaving the area by medical problems.  Because of difficulty accessing funds, he had arrived in Wishram on August 26 without money to pay for housing and had slept outside.  He claimed that during his short time in Klickitat County, he was harassed by the sheriff's department and specifically by Sergeant Kilian.  He moved the court to require the State to produce police records of his prior contacts with officers from the county sheriff's office, claiming they would help him establish a pattern of harassment and bias.  The trial court denied the requests, finding that Mr. Arendas had not demonstrated the relevance of information about prior contacts.

Mr. Arendas also moved for the opportunity to view Sergeant Kilian's patrol car after he learned that one of the State's witnesses—a BNSF conductor who had been standing behind Sergeant Kilian's patrol car after Mr. Arendas was placed inside— claimed to have seen Mr. Arendas spit in Sergeant Kilian's face.  Mr. Arendas said he wanted to view the patrol car's tinted windows, because he doubted the conductor could have seen into the interior of the patrol car late at night.  The trial court denied the

3

motion, telling Mr. Arendas that he could cross-examine the conductor about his ability to see.

During the State's case, its witnesses included Mr. Young and the BNSF conductor. Mr. Arendas had served his own subpoenas on the BNSF witnesses. At the conclusion of the witnesses' testimony in the State's case, the prosecutor asked the trial court to quash Mr. Arendas's subpoenas so that the two witnesses could leave. When questioning by the trial court led it to conclude that Mr. Arendas had no further areas of questioning for the two witnesses, it quashed the subpoenas, citing its authority to control the mode of presenting evidence and to exclude cumulative evidence.

During a jury instruction conference following the conclusion of testimony, the State informed the court that it was no longer offering its originally-proposed instruction 13, which was based on a Washington pattern jury instruction that identifies statutory defenses to first degree criminal trespass, including a public premises defense. The trial court asked Mr. Arendas if he was asking the court to offer that instruction, and Mr. Arendas responded, twice, that he did not care if the instruction was given. The court excluded it. Mr. Arendas took no exception to the final jury instructions.

The jury returned its verdicts finding Mr. Arendas guilty as charged on the afternoon of the one-day trial.

At the time of his sentencing hearing, Mr. Arendas had been in custody for 84 days. Given an offender score of 0, he faced a standard range of 1 to 3 months for the

third degree assault, a class C felony, and 0 to 364 days for the criminal trespass, a gross

misdemeanor. The trial court imposed 3 months for the assault and ordered 12 months'

community custody. On the trespass charge, the court stated it would "post" 364 days

but suspend 274 of the days "upon the condition that you do not have any contact with

the Train Depot Station—Burlington Northern Santa Fe Depot Station down there." RP

at 530. The court later clarified that the condition would extend to BNSF and all of its

properties. In completing the judgment and sentence, the court included a handwritten

notation of the prohibition of contact with BNSF in the section dealing with community

custody.

The trial court imposed $800 in legal financial obligations that included the $200

criminal filing fee.

Mr. Arendas appeals.

ANALYSIS

Represented by counsel on appeal, Mr. Arendas raises seven assignments of error.

We address them in the order presented, combining two challenges that are based on Mr.

Arendas's right to present a defense and two challenges to the prohibition of contact with

BNSF and its properties.

I.    THE EVIDENCE OF CRIMINAL TRESPASS WAS SUFFICIENT

A person is guilty of criminal trespass in the first degree if he or she knowingly

enters or remains unlawfully in a building. RCW 9A.52.070(1). "A person 'enters or

remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2). A person remains unlawfully in a building by remaining after a license previously extended is specifically revoked, by someone with authority over the premises. *State v. Davis*, 90 Wn. App. 776, 781, 954 P.2d 325 (1998).

Mr. Arendas challenges the sufficiency of the State's evidence on the trespass count, relying on the fact that it is a statutory defense to trespass that "[t]he premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises." RCW 9A.52.090(2). Mr. Arendas contends that because he had a train ticket for the next departing train and the waiting room is open 24 hours a day, this "public premises" defense applied.

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the trier of fact on matters of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). A conviction will be reversed only when no rational trier of fact could have found that the State proved all of the elements of the crime beyond a reasonable doubt. *State v. Smith*, 155 Wn.2d 496, 501, 120 P.3d 559 (2005).

Mr. Arendas's argument depends on his position that a "no loitering" sign posted on the door to the waiting room identified BNSF's only lawful condition to presence on its premises. But conditions to entering and remaining on premises can also be imposed by authorized agents of the proprietor, as this court recognized in *State v. Finley*, in which a bartender ordered a patron to leave a bar. 97 Wn. App. 129, 138, 982 P.2d 681 (1999). As this court also held in *Finley*, what an individual "understood" or "believed" about the lawfulness of his presence is not relevant to the public premises defense; the pertinent viewpoint is that of a rational trier of fact. *Id.* A reasonable trier of fact can conclude beyond a reasonable doubt that an individual knowingly remains unlawfully on premises when he has been told by someone in authority that he needs to leave and refuses. *Id.* at 139.

Mr. Arendas argues that to commit first degree criminal trespass one must "knowingly" enter or remain unlawfully in a building, and there was no evidence that he heard Mr. Young's two orders. But Mr. Young, a former gunnery sergeant, testified that he spoke loudly to Mr. Arendas, using his "command" voice, and he and the responding officers testified that Mr. Arendas was immediately alert once the officers appeared. The jury was not required to believe Mr. Arendas's claim that he never heard Mr. Young tell him to leave. Additionally, the testimony of Mr. Young and the officers was that Mr. Arendas was given additional opportunities to comply with Mr. Young's demand that he leave before the decision was made to arrest him. There was sufficient evidence from

which the jury could find that Mr. Arendas knowingly remained unlawfully in the waiting room.

II.     GIVEN THE THEORY OF THE STATE'S CASE, WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 19.06 DID NOT APPLY

Mr. Arendas makes a related argument that it was error for the trial court to fail to give a Washington pattern jury instruction originally proposed by the State as its instruction 13, which it later withdrew. The pattern instruction identifies statutory defenses to first degree criminal trespass and the State's burden to disprove a statutory defense that arguably applies. Mr. Arendas argues for the first time on appeal that the public premises defense applied and required giving the pattern instruction in the following form:

> It is a defense to a charge of criminal trespass in the first degree that the premises were at the time open to members of the public and the defendant complied with all lawful conditions imposed on access to or remaining in the premises.
> The State has the burden of proving beyond a reasonable doubt that the trespass was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to this charge.

*See* 11 WPIC § 19.06, at 337 (4th ed. 2016). He argues that the failure to give the instruction was manifest constitutional error "in that it concerns the burden of proof, an issue of due process," and had practical and identifiable consequences in the trial. Br. of Appellant at 16-17.

8

As the instruction makes clear, if evidence is offered that might support the public premises defense, then the State bears the burden to prove the absence of the defense. This is because the defense negates the unlawful presence element. *City of Bremerton v. Widell*, 146 Wn.2d 561, 570, 51 P.3d 733 (2002); *State v. Olson*, 182 Wn. App. 362, 375-76, 329 P.3d 121 (2014).

At no point in proceedings below did the State base its general charge of first degree criminal trespass on a contention that Mr. Arendas committed the trespass when he entered the waiting room. Its consistent position was that he committed trespass when he remained after being told by Mr. Young to leave, and after having his obligation to leave affirmed by Sergeant Kilian and the deputy. Sergeant Kilian's declaration in support of probable cause stated that he and the deputy responded to the Wishram depot after being told "that a BNSF employee (Eric Young) told the subject to leave twice but got no response." Clerk's Papers (CP) at 5. The declaration in support of probable cause described the events following the officers' arrival that led to the arrest:

> I told Arendas he was trespassed from the property and had to go. He began tying one of his shoes, but then continued to yell at all of us. I told him to get his stuff and leave now. He did not comply. I told him at least four, if not five times he had to go now. He continued to yell and would not comply. . . .

*Id.*

9

At trial, Mr. Arendas cross-examined the deputy sheriff who accompanied

Sergeant Kilian about what constituted his trespass, and he received the following

response:

> BY MR. ARENDAS:
>
> Q      How did I trespass?
> A      You were unwanted on the property of someone else.
> Q      What was the basis of your reasonable investigation to determine that?
> A      An employee from the railroad said that you had—or said that he had asked you to leave several times and you didn't respond to him.

RP at 350.

In finalizing the jury instructions, the trial court was aware that the only trespass

alleged by the State was that Mr. Arendas defied Mr. Young's orders, even after Sergeant

Kilian and the deputy affirmed that he was required to leave.  That theory of trespass

inherently negated the possibility that Mr. Arendas complied with lawful conditions

imposed by BNSF.  Because the public premises defense could not apply given the

State's theory, the trial court did not commit error by accepting Mr. Arendas's position

that WPIC 19.06 need not be given.

III.    THE TRIAL COURT DID NOT DEPRIVE MR. ARENDAS OF HIS RIGHTS TO PRESENT A DEFENSE OR TO COMPULSORY PROCESS

A.      Discovery

CrR 4.7 governs criminal discovery, including a prosecutor's affirmative

disclosure obligations and certain additional disclosures that a defendant is entitled to

10

obtain from the prosecutor upon request and specification. CrR 4.7(a), (c). Otherwise, "[u]pon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to the defendant of [other] relevant material and information." CrR 4.7(e)(1). Both threshold requirements—materiality and reasonableness—must be met before the court may exercise discretion in granting the request. *State v. Norby*, 122 Wn.2d 258, 266, 858 P.2d 210 (1993). A decision as to the scope of criminal discovery is within the trial court's discretion and will not be disturbed absent a manifest abuse of that discretion. *State v. Blackwell*, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993) (citing *State v. Yates*, 111 Wn.2d 793, 797, 765 P.2d 291 (1988)).

A criminal defendant's *constitutional* right to disclosure of evidence is limited to evidence favorable to the defendant and material to guilt or punishment. *Id.* at 828 (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)). If a defendant requests a disclosure beyond what the State is obligated to disclose, the defendant "must show that the requested information is material to the preparation of his or her defense." *Id.* "The mere *possibility* that an item of undisclosed evidence *might* have helped the defense or *might* have affected the outcome of the trial . . . does not establish 'materiality' in the constitutional sense." *State v. Mak*, 105 Wn.2d 692, 704-05, 718 P.2d 407 (1986) (alterations in original).

Mr. Arendas's briefing reveals his inability even now, and represented by counsel, to demonstrate that evidence of his prior contacts with sheriff's personnel were material to preparing his defense. His brief states that even "[t]he *relevance* of the reports could not be determined without a review of the reports," and that he requested the reports "*to investigate* whether the sheriff's office . . . engaged in a pattern of harassment and bias against him." Br. of Appellant at 21 (emphasis added). Mr. Arendas was a party to the prior contacts and was able to testify to his version of what occurred. He fails to demonstrate that the trial court manifestly abused its discretion by refusing to order disclosure of the State's records of those contacts.

As for Mr. Arendas's request to view Sergeant Kilian's patrol car, the State had already provided Mr. Arendas with photographs of the interior of the patrol car, and, in response to his motion, the trial court ordered the State to provide Mr. Arendas with a photo of the vehicle from the outside. As the court explained, the conductor's ability to see through tinted windows could be explored through cross-examination.

Mr. Arendas did challenge the conductor's alleged observations through cross-examination. The conductor repeatedly agreed that the rear window of the patrol car was tinted. Asked by Mr. Arendas how he could see through the tinted window in the dark and whether he had "flashlight eyes," the conductor responded, "There's lights in the parking lot." RP at 329. Mr. Arendas fails to demonstrate any respect in which his defense was hampered by denial of his motion to view the patrol car.

12

B.      Compulsory process

Mr. Arendas contends that the trial court improperly quashed his subpoenas and released the BNSF witnesses after they testified and had been cross-examined in the State's case.

Both the federal and Washington State Constitutions guarantee criminal defendants a right of compulsory process. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. But a "defendant's right to present witnesses has limits." *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 296, 359 P.3d 919 (2015). In exercising the right to present witnesses, a defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

We review the trial court's evidentiary rulings for abuse of discretion and defer to those rulings unless no reasonable person would take the view adopted by the trial court. *State v. Clark*, 187 Wn.2d 641, 648, 389 P.3d 462 (2017). If the court excludes relevant defense evidence, we determine as a matter of law whether the exclusion violated the constitutional right to present a defense. *Id.* at 648-49 (citing *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010)).

The trial court quashed the subpoenas and released the BNSF witnesses only after asking Mr. Arendas repeatedly whether he had areas of questioning beyond those already covered in his cross-examination. Mr. Arendas could identify none, but protested that he could not be sure without reviewing his notes. The trial court stated it would have the BNSF witnesses remain through the lunch recess, directing Mr. Arendas to review his notes and report back at 12:55 p.m. on any additional areas of questioning that remained.

When trial resumed following the recess, Mr. Arendas told the court he could not identify additional information needed "at this time," but stated, "I don't want to excuse the witnesses, that's just what I want to do. I don't want to excuse them." RP at 339-40. At that point, the trial court relied on its authority under ER 611 and ER 403 to quash the subpoenas.

Under ER 611(a), Washington courts have broad authority to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," including to protect witnesses from harassment. Under ER 403, the court may exclude relevant evidence based on considerations of the needless presentation of cumulative evidence. The trial court did not abuse its discretion in applying the two rules. Because Mr. Arendas can identify no relevant evidence that was excluded, no Sixth Amendment issue is presented.

IV.    THE LIMITATION ON CONTACT WITH BNSF OR ITS PROPERTIES IS PROPER AS A
CONDITION TO MR. ARENDAS'S SUSPENDED SENTENCE ON THE TRESPASS CHARGE,
BUT NOT AS A CONDITION OF COMMUNITY CUSTODY

Mr. Arendas argues that the condition that he have no contact with BNSF or its

properties is unconstitutionally vague and is not crime related. He proceeds on the

premise that the condition was intended as a discretionary crime-related prohibition under

RCW 9.94A.703(3)(f). Under that provision, a court sentencing a person to a term of

community custody shall impose conditions, which can include discretionary crime-

related prohibitions. We review the "imposition of crime-related prohibitions for abuse

of discretion." *State v. Cordero*, 170 Wn. App. 351, 373, 284 P.3d 773 (2012).

The trial court was authorized by the Sentencing Reform Act of 1981, chapter

9.94A RCW (SRA), to order community custody in connection with Mr. Arendas's

sentence on the assault count, since third degree assault is a crime against a person under

RCW 9.94A.411. RCW 9.94A.702(1)(c). But the trial court was not authorized to order

community custody in connection with the criminal trespass count because criminal

trespass is a gross misdemeanor. RCW 9A.52.070(2). The SRA applies only to felony

sentencing. *State v. Besio*, 80 Wn. App. 426, 431, 907 P.2d 1220 (1995). Because a

prohibition on contact with BNSF or its properties is not reasonably related to Mr.

Arendas's commission of assault, which was the sole basis for imposing community

custody, it was error to identify it as a condition of community custody in section 4.2 of

15

the judgment and sentence. We remand the case with directions to strike the order that

Mr. Arendas have no contact with BNSF or its properties from section 4.2.

A sentencing court has the authority to suspend all or any portion of the sentence

for a gross misdemeanor and may do so on conditions that tend to prevent the future

commission of crimes. RCW 9.95.200; RCW 9.92.060; *State v. Morgan*, 8 Wn. App.

189, 190, 504 P.2d 1195 (1973) (citing *Spokane County v. Farmer*, 5 Wn. App. 25, 486

P.2d 296 (1971)); *State v. Summers*, 60 Wn.2d 702, 707, 375 P.2d 143 (1962). In

announcing its sentence, the trial court stated that it was suspending 274 days of Mr.

Arendas's sentence for the trespass charge "upon the condition that you not have any

contact with the Train Depot Station—Burlington Northern Santa Fe Depot Station down

there." RP at 530.

The prohibition of contact with BNSF or its properties is valid as a condition of

his suspended sentence on the trespass charge. The crime-relatedness required by the

SRA does not apply to conditions imposed on misdemeanant offenders. *State v.

Williams*, 97 Wn. App. 257, 263, 983 P.2d 687 (1999). Determining which conditions

are appropriate is within the court's discretion. *State v. LaRoque*, 16 Wn. App. 808, 810,

560 P.2d 1149 (1977).

Turning to Mr. Arendas's vagueness challenge, we assume the vagueness doctrine

would apply if the condition to the suspended sentence did not sufficiently define the

proscribed conduct so that an ordinary person could understand the prohibition or did not

16

provide sufficiently ascertainable standards to protect against arbitrary enforcement. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).[1]  Mr. Arendas argues on appeal that BNSF's extensive property holdings make compliance with the condition burdensome, but burdensomeness is not the test.  A condition requiring that Mr. Arendas "have no contact with . . . Burlington Northern Santa Fe Railroad or its properties" is understandable and presents a standard that is ascertainable.  It is not unconstitutionally vague.

On remand, the judgment and sentence may be corrected to provide that the prohibition on contact with BNSF or its properties is a condition to the suspended sentence.

V.     MR. ARENDAS HAS NOT DEMONSTRATED A RIGHT TO RELIEF FROM THE CRIMINAL FILING FEE

In a supplemental brief, Mr. Arendas asks that we order the trial court to strike the $200 criminal filing fee imposed at sentencing, citing *State v. Ramirez*, 191 Wn.2d 732, 745-49, 426 P.3d 714 (2018).  *Ramirez* held that a legislative overhaul of Washington's legal financial obligations provisions that became effective in June 2018 applies to cases then on direct review.  *Id.* at 747.  The 2018 changes provide in part that the criminal filing fee cannot be imposed against a defendant who is indigent as defined in RCW 10.101.010(3)(a)-(c) at the time of sentencing.  RCW 10.01.160(3).

---

[1] We note, however, that the issue has not been briefed by the parties.

The record reveals that Mr. Arendas was found indigent for purposes of appointment of counsel at trial and on appeal, but it does not disclose whether he was indigent as defined by RCW 10.101.010(3)(a)-(c). If Mr. Arendas was found indigent based on the definition provided by RCW 10.101.010(d), then the criminal filing fee was properly imposed. RCW 36.18.020(2)(h). Mr. Arendas has not established that the fee should be struck.

STATEMENT OF ADDITIONAL GROUNDS

Mr. Arendas filed a pro se statement of additional grounds (SAG). A defendant may file an SAG to identify and discuss matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's appellate lawyer.

*Prior reports.* Mr. Arendas argues that he was wrongfully denied reports of his prior contact with the Klickitat County Sheriff's Office and Sergeant Kilian. This issue was adequately addressed by counsel and will not be reviewed further. *See* RAP 10.10(a); *State v. Thompson*, 169 Wn. App. 436, 492-93, 290 P.3d 996 (2012) (allegations of error that have been adequately addressed by counsel are not proper matters for an SAG).

*Improper amendment of charges.* Mr. Arendas contends that the State filed an amended information adding the criminal trespassing charge two days before trial because he refused to accept a plea offer. An information may "be amended at any time

18

before verdict or finding if substantial rights of the defendant are not prejudiced."
CrR 2.1(d). Generally, the State is liberally allowed to amend the information provided
that the defendant is aware of the charges. *State v. Pelkey*, 109 Wn.2d 484, 490, 745 P.2d
854 (1987); *State v. Ziegler*, 138 Wn. App. 804, 808, 158 P.3d 647 (2007). Mr. Arendas
knew he was originally arrested for trespassing. The filing of additional charges after
plea negotiations fail does not give rise to a presumption of improper prosecutorial
vindictiveness. *State v. Korum*, 157 Wn.2d 614, 631, 141 P.3d 13 (2006).

*Perjury*. Mr. Arendas contends that Sergeant Kilian committed perjury. While
Mr. Arendas suspects the sergeant of committing perjury, he does not point to anything in
the record on appeal that proves it. If Mr. Arendas has evidence outside the record that
would establish that the sergeant committed perjury and, if so, that the jury's verdict of
guilt was likely to be influenced, his remedy is to file a personal restraint petition (PRP)
with the supporting evidence. *State v. Turner*, 167 Wn. App. 871, 881, 275 P.3d 356
(2012).

*No prior trespass warning*. Mr. Arendas appears to argue that the State did not
prove that he had been trespassed from the Wishram depot before the time of the charged
offense. The State was not required to prove that he had been trespassed earlier. A
verbal order of the sort testified to by Mr. Young can revoke a license or privilege to
remain in a building. *See State v. Kutch*, 90 Wn. App. 244, 247, 951 P.2d 1139 (1998).

*No authority over the waiting room.* Mr. Arendas contends that BNSF employees did not have authority over an Amtrak waiting room. Mr. Young testified that the Wishram railroad yard and depot is owned by BNSF, that the waiting room is "labeled" for Amtrak, and that his job responsibilities include reporting any trespass situation to BNSF's railroad police, who then coordinate with local law enforcement. The evidence was sufficient to establish BNSF's authority over the waiting room.

*False photographs and DNA.*[2] Mr. Arendas contends the State presented falsified photographs of Sergeant Kilian's patrol car. As with the alleged perjury, if Mr. Arendas has proof that the photographs were falsified and the jury's finding of guilt was likely influenced thereby, his remedy is to file a PRP with the supporting evidence. He also contends that the State failed to conduct DNA tests on the spit in the back of the patrol car. It was not required to. The State presented eyewitness testimony that Mr. Arendas spat in the sergeant's face.

*Photograph not provided.* Mr. Arendas contends he was never provided with the photograph from outside Sergeant Kilian's patrol car that the trial court ordered be provided. The time to have objected to that failure was at trial, when the court could have done something about it. We will not consider the argument for the first time on appeal. RAP 2.5(a).

---

[2] Deoxyribonucleic acid.

*Objections*.  Mr. Arendas asserts that the trial court erred by allowing the prosecutor to object over 71 times during the one-day trial.  Mr. Arendas identifies no authority suggesting that a party is limited in the number of objections it may make.

*Utah conviction*.  Mr. Arendas was cross-examined about whether he had spit on people before, and, specifically, whether he had been convicted in Utah of spitting on someone.  Mr. Arendas argues on appeal that the State's questions about the Utah conviction and a related exhibit misled the jury.  Mr. Arendas did not object in the trial court, however.  Objections to evidence need to be raised in the trial court; they will not be entertained for the first time on appeal.  RAP 2.5(a).

*Unlawful arrest*.  Mr. Arendas argues that he was unlawfully arrested.  He does not inform the court of the nature of the problem with his arrest or why it would be a basis for relief from his judgment and sentence.  We will not consider it.  RAP 10.10(c).

We affirm the convictions but remand with directions to correct the judgment and sentence so that the prohibition of contact with BNSF and its properties is identified as a condition of the suspended sentence rather than as a condition of community custody. The court may also entertain any evidence that the criminal filing fee should be struck based on Mr. Arendas's indigence.

No. 35751-1-III
*State v. Arendas*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, C.J.                      Korsmo, J.